Abraham Stapleton #P-18824
RJDCF   B8-224
480 Alta Road
San Diego, Ca. 92179

IN PRO PER

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ABRAHAM STAPLETON,
    PETITIONER,

vs.

E. CRUZ, et, al,
    DEFENDANTS

CASE NO. 18-cv-00733-LAB-JLB

VERIFIED FIRST AMENDED COMPLAINT PURSUANT TO 42 U.S.C. § 1983

JURY TRIAL DEMANDED

## I. COMPLAINT

1. This is a verified first amended complaint pursuant to 42 U.S.C. § 1983 filed by plaintiff Abraham Stapleton, a state prisoner, alleging a violation of his constitutional rights and seeks money damages.

## II. JURISDICTION

2. This court has jurisdiction over this civil rights action pursuant to 28 U.S.C. §§ 1331 and 1343

3. Plaintiff seeks money damages; and both declatory and injunctive relief as authorized under 28 U.S.C. § 2201, 2202, 2283, 2284, and Rule 65 of the Federal Rules of Civil procedure.

## III. VENUE

4. The Southern District Of California, is an appropriate venue pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occured in This district.

## IV. EXHAUTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff Abraham Stapleton has exhausted all available administrative remedies on the claims presented in this complaint before filing this Amended Complaint.

6. Plaintiff identified Defendant E. Cruz in the body of his administrative appeal and at the manatory second level interview, plaintiff identified the second floor officer and the gun control booth officer and requested that they be identified since neither had filed manatory supplemental reports about the September 2, 2016 incident.

## V. PARTIES

7. Plaintiff Abraham Stapleton #P-18824 is and was at all times relevant herein, in the care, custody and control of employees of the California Department of Corrections and Rehabilitation at RJD Correctional Facility ("RJDCF") in San Diego, Ca.

8. Defendant E. Cruz was at all times relevant herein, was employed at RJDCD as a Correctional Officer ("C/O"), acting under color of state law and is being sued in his official and individual capacities.

9. Defendant J. Mendoza was at all times relevant herein was employed at RJDCF as a Correctional Officer ("C/O"), acting under color of state law and is being sued in his official and individual capacties. J. Mendoza was the second floor officer working with E. Cruz and whose identy was requested at the second level manatory interview during the appeal process.

10. Defendant M. Hill (previously identified as John Doe) was at all times relevant herein was emplyed at RJDCF as a Correctional Officer ("C/O"), acting under color of state law and is being sued in his official and individual capacities. M. Hill was the gun booth control officer during the incident covering the floor officers and dayroom activities and whose identy was also requested at second level of the appeal process and again after the complaint was filed.

2.

11. Defendant D.A. Paramo was at all times relevant herein was employed at RJDCF as the Warden, acting under color of state law and is being sued in his official and individual capacities. He is a defendant herein for his administrative acts as the warden of Richard J. Donovan State Prison. He is also a defendant for his failure to train or properly train his officers as alleged herein.

## VI. STATEMENT OF FACTS.

Plaintiff hereby incorporates paragraphs 1-11 as though fully set forth herein.

The Plaintiff Abraham Stapleton:

12. On September 2, 2016 plaintiff was assigned to paint inside of C yard Facility Housing unit #12 by Officer Edrozo. Plaintiff as an inmate was required to follow the direct orders of Correctional officers such as Officer Edrozo and Cruz. Officer Edrozo was a C yard S&E officer whose duties included supervising inmate workers charged with building maintance.

13. Officer Cruz and Mendoza were assigned on September 2, 2016 to unit #12 as second Watch Floor officers, for safety and security.

14. When Plaintiff entered unit #12, He reported to defendants Cruz and Mendoza. Plaintiff asked Defendant Cruz what he needed painting. Defendant Cruz pointed at some 25 er logo/grafitti in front of the counselors office and said he wanted plaintiff Stapleton to paint over that "gang shit".

15. Plaintiff walked over to the counselors office and begin to set up to the job he had been ordered to do. It was about 10:15 A.M.. The Second tier was at that time out for morning dayroom and phone use

16. As plaintiff begin to paint in front of the counselors office, covering up the offensive gang "25" (two fiver) grafitti, Plaintiff was approached by inmate Arreola, AKA Kilo, a known and documented 25 gang member. Inmate Arreola begin to talk to plaintiff in a loud voice in which he ordered plaintiff to stop doing what he was doing and started making threats toward the plaintiff. According to inmate

3.

Arreola, Plaintiff was disrespecting him personally and the 25 gang by painting over the logo/tags/grafitti. Plaintiff stopped painting and turned to ask Officer Cruz what he should do. Defendant Cruz and Mendoza were sitting at the officers podium watching and listening to the exchange. Defendant Cruz was smiling as he ordered plaintiff Stapleton to do his job and paint over the grafitti.

17. Upon information and belief, Defendnats Cruz and Mendoza were aware of the danager they were placing inmate Stapleton by ordering him to paint over the gang grafitti while the dayroom was operating and known gang members were watching Furthermore, Upon information and belief, these job duties are generally carried out by free staff because of the risk to inmate workers and yet, Plaintiff a white inmate, was ordered by mexican officers to paint over a mexican gang's tags while those same gang members were watching.

18. As plaintiff turned back and resumed his painting over of the 25 er grafitti, inmate Arreola started swinging on plaintiff stiking plaintiff in the facial area. One of the blows hit plaintiff in his right eye which plaintiff could feel beginning to swell. Plaintiff begin to defend his self as best as he could.

19. When Defendant Cruz told plaintiff to do his job and paint over the grafitti, Defendant Mendoza got up and went into the officers office. When inmate Arreola started to swing, Defendant Cruz who was already standing ran across the dayroom floor and into the officers office where he slammed the door shut, ( see Exhibit "C" attached).

20. Plaintiff was afraid for his life and begin to yell at the officers for help, which went of deaf ears. Cruz and Mendoza were laughing and refused to push thier alarm buttons to call for other officers to respond to this attack on plaintiff by inmate Arreola, Villa and Lopez. Instead, They allowed three mexican inmates to attack plaintiff one after another over a period of three to five minutes while they stood in thier office free of injury.

21. Plaintiff begin to protect himself and plaintiff and inmate Arreola

4.

fought for over a minute. When inmate Arreola stopped, Inmate Villa took over the fight. Plaintiff continued to plead for help from defendants Cruz and Mendoza, but to no avail.

22. Plaintiff and inmate Villa were fighting each other for about a minute at which time inmate Villa called out to inmate Lopez who also begin to fight with Plaintiff. Inmate Villa stopped as Inmate Lopez took over the fight and leaned up against the officers Office wall. This entire incident was observed by Defendants Cruz, Mendoza and Defendnat Hill.

23. After defendants became aware that plaintiff was bleeding from serveral places of the face and that Plaintiff's eye and face were swollen and that plaintiff could barely see out of his right eye, Defendant Cruz said something to Inmate lopez in Spanish, inmate Lopez stopped his beating of plaintiff and Cruz pushed his alarm to summon additional staff. Plaintiff is white.

24. upon information and belief, Defendants Cruz, Mendoza and Hill had ample time to push thier alarms minutes before they did and may have been able to minimize the pain and injury that plaintiff sufferred as a result of thier deliberate indifference to plaintiffs personal safety. Futhermore, In light of the grafitti that Defendant Cruz wanted painted over (gang tags/logo) he knew that he should not have ordered an iNMAte to do it, but should have requested that the work be completed by staff. In ordering the plaintiff to do the job, He knowingly placed the plaintiff's life and personal safety at risk.

25. Plaintiff was taken to medical for treatment. Specifically to stop the bleeding. Plaintiff later had to go to the hospital for RT lasing OD for his right eye which will never fully recover (see attached report of Dr. Jason Moss MD "vitred Retinal surgeon at Exhibit 'A' ) and CDCR 7119 Medical report attached as Exhibit "B" ).)

26. During the entire time of the beating of the plaintiff, by these three gang members, Defendants Cruz, Mendoza and Hill stood by and just watched until

5.

the fight was passed three minutes and was coming to an end. Defendants watched as plaintiff tried to escape and called for help. Cruz and Mendoza were laughing.

27. Although Defendants Mendoza and Hill observed the complete incident, neighter wrote or submitted a required supplemental incident report as mandated by CCR §3286. As a result of this violation, Plaintiff was unable to identify Defendants Mendoza and Hill until after the time when he submitted the inmate appeal. However, plaintiff did identify the Gun Control officer and Defendant Mendoza during the manatory interview with Lt. E. Garcia on November 18, 2016 At that interview, Plaintiff informed Lt Garcia of the facts and requested that Defendants Mendoza and Hill be identified and made a part of the inmate appeal on the same grounds as Cruz. Thus, defendants were placed on notice and given a fair chance to address the matter on the merits. Accordingly, there is no failure to exhaust administrative remedies as to defendants Mendoza and Hill on the grounds they were not identified in the body of the inmate appeal.

28. Upon information and belief, The assault of plaintiff, by three members of the prison gang 25 ers was caused by defendants who aided and encouraged inmate Arreola, Villa and Lopez to assault plaintiff. The defendants conduct constitutes a violation of plaintiffs Constitutional right. Defendants were deliberately indifferent to plaintiffs safety and they failed to protect plaintiff in violation of his Eighth Amendment Rights. As trained Correctional Officers, there can be no doubt, that defendants knew they were endangering plaintiff's safety in ordering him to paint over gang grafitti in front of the gang members and commanders.

DEFENDANT PARAMO, WARDEN OF RICHARD J. DONOVAN

29. Defendant paramo, as the Warden for RJD was the responsible charging authority. As the warden, had and has a duty to supervise and train his Correct-ional Officers in the fair treatment of inmates. Furthermore, Defendant Paramo had a direct and supervisory duty to investigate and interview his correctional officers once he received the incident report and the doctors reports of the

. plaintiff's injuries, including the officers conduct in their role as safety and security personel. Defendant Paramo failed in his duties to properly train his officers, and to set and enforce policies that would have prevented this incident from occuring in the first place.. The failure of Defendant paramo was wilful and intentional as he knew his officers conduct was inappropriate under the circumstances described herein.

30. As a direct result of the misconduct of the defendants described herein, Plaintiff suffered severe pain and physical injuries to his person.

31. In doing as alleged herein, defendants and each of them knew that their conduct, attitude, and actions or ommissions created an unreasonable risk of serious injury and harm to plaintiff.

32. in doing as alleged herein, Defendants and each of them acted maliciously and sadistically in their action or failure to act.

33. Plaintiff is informed and believes and theron alleges taht defendants and each of them knew their action or failure to act would be harmful to plaintiff and continued to carry out their offensive behavior. in doing as alleged herein, defendants and each of them implemented a policy that repudiates plaintiffs constitutional rights and are responsible for plaintiffs injuries. Defendants acted intentionally in the manner described and with knowledge of plaintiffs suffering and of risk of futher serious injury.

34. In addition to the physical pain and suffering, Plaintiff is also claiming emotional and psychological injury. stress, fear, nightmares, lack of sleep difficulty trusting staff with my safety.

35. Upon information and belief, Defendants action of smiling and laughing as plaintiff was getting his ass kicked, not pushing the alarm until 3 to 5 minutes into the fight demonstrates defendants acted with evil intent and and reckless indifference to plaintiffs safety. Additionally, there can be no doubt that by wlking to the office just before the first blow, defendant Mendoza knew what

7.

was about to occur. Defendant Cruz showd both his cowardness and indifference to plaintiffs safety and well being.

## VII. CLAIMS FOR RELIEF

Plaintiff hereby incorporates 1-35 as though fully set forth herein

36. The violation of plaintiff's consitutional rights occurred as a direct and proximate cause of the intentional, arbitrary and malicious acts of the defendants herein acting under color of law.. The conduct, when viewed in its totality and compared with reasonably accepted standards of conduct, must be characterized as exhibiting deliberate indifference to the plaintiffs constitutional rights, which resulted in both physical and emotional pain and injury. The actions of defendants were willful and shocking to the conscience of a civilized society. Plaintiff has suffered grievious mental, physical and emotional pain, and loss of sight in his right eye.. The acts and ommissions under color of law complained of herein include, but are not limited to:

A. The regular and systematic use of inmates to assault other inmates by the defendants to specific inmates whom opposed Defendant paramo's administration with complaints against his officers or programs, or against inmates for one reason or another are not in favor such as rats, sex offenders or inmates who are problems.

B. Correctional officers allowing gangs to impose their will on other inmates, or in the alternative, allowing gangs to deal with other problem inmates who have went agaisnt the officers, including defendants.

C. Allowing officers to violate or ignore policies when documenting incidents such as those described herein

D. Prison Officials using inmates against other inmates as agents of the state under color of law.

37. These acts and ommissions created within RJD an atmosphere in which safety and security were deliberately and knowingly disregarded in the belief

and knowlege that such acts would be condoned, justified, or overlooked by their superiors

38. The failure of defendants to provide training and supervision, or to follow said training, regarding the proper safety and secuirty for inmates, amounts to deliberate indifference. ( For example, It is common knowlege among law inforcement that gang members and gangs take it seriously when someone washes or paints out their tags, logos, grafitti) Thus, Defendants knew they were ordering Plaintiff to do a job that would harm him and they ordered it so they could get a laugh and drama. Such patters and practices by defendants were designed to assure assaults of plaintiff and other problem inmates at all cost and in dereliction of duty.

39. Defendants conduct violated clearly established statutory and/or constitutional rights of which a reasonable person whould have known.

40. As a result of the conduct of defendants as described herein above, The plaintiff was deprived of his right to be secured in his person against assaults by other inmates at the order of California Correctional Officers, or assault by other inmates because defendant correctional officers ordered plaintiff to undertake some risky and known danger or duty.

41. Upon information and belief, the violation of plaintiff's Constitutional rights in violation of the Eighth Amendment, and the resulting physcial pain and injury warrants an award of $500.000.00. Futhermore, the conduct of defendants was willful, wanton, malicious, shocking to the conscience which was demonstated by thier laughing and smiling prior to and during the incident and also by the long delay in pushing the alarm..

///

## VII. PRAYER FOR RELIEF

Plaintiff realleges and incorporates by referrence paragraphs 1-41 as if alleged herein

42. A declaration that the acts and/or ommissions described herein violated plaintiffs rights under the constitution and the laws of the United States and of California.

43. Issue a preliminary and permanant injunction ordering Defendants or their agents to stop using inmate, including the plaintiff, from washing over or painting over gang logo, tags or grafitti especially when the members of the gang are watching.

44. Award Compensatory damages for plaintiff's injuries in the amount of $500,000.00

45. Award Punitive damages against defendants in the amount of $1,000,000.00 for the evil and malicious behavior displayed by defendants and their clear enjoyment at plaintiffs pain, fear and need for help. A meesage needs to be sent to defendants and their co-workers that such conduct and disregard for the safety of inmates in their care will not be tolerated for their entertainment pleasure.

46. Award Nominal Damages

47. Award the plaintiff the cost of this suit and reasonable attorney fees

48. Appoint Counsel for the plaintiff who is indigent and untrained in the law.

49. Grant such other relief as the court may deem plaintiff is entitled to.

Wherefore, the plaintiff respectfully prays for the relief above

DATED 9/16/18

Abraham Stapleton, pro per

## DECLARATION

I declare under penalty of perjury under the laws of the state of California and the United States Of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct, except those things based on information and belief and I believe them to be true. If called on to testify as a witness, I could and would testify to the facts stated herein based upon my personal knowledge.

Executed this __16__ day of Setember 2018 in San Diego, California

Abraham Stapleton, Pro per

Thank you for allowing me to assist in the care of Abraham Stapleton. Please do not hesitate to call me if I may provide any additional information.

Sincerely,

Electronically signed by Jason Moss, MD

**MOSS, JASON, M.D.**
Vitreo-Retinal Surgeon
California Retina Associates
(619) 425-7755 • (760) 352-7755
Dictated but not read

Confidential Saved 2017-04-18T22:27:27Z

# EXHIBIT

# B

EXHIBIT B

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION
**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle): INJURY / USE OF FORCE / **UNUSUAL OCCURRENCE** (circled) | ON THE JOB INJURY / PRE AD/SEG ADMISSION | DATE |
|---|---|---|---|---|
| RJD | FC | | | 8/2/16 |

| THIS SECTION FOR INMATE ONLY | NAME LAST: Stapleton | FIRST: Abraham | CDC NUMBER: P18824 | HOUSING LOC.: 11-247 | NEW HOUSING LOC.: unknown |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME LAST: NA | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST: NA | MIDDLE | DOB: NA | OCCUPATION: NA |
| | HOME ADDRESS | CITY: NA | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE: FC 11 | DATE/TIME OF OCCURRENCE: 8/2/16 | NAME OF WITNESS(ES): N |
|---|---|---|

| TIME NOTIFIED: 0958 | TIME SEEN: 0959 | ESCORTED BY C/O: McWay | MODE OF ARRIVAL (circle): LITTER / WHEELCHAIR / **AMBULATORY** / ON SITE | AGE: 41 | RACE: White | SEX: M |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

I/P stated "No statement"

| INJURIES FOUND? **YES** / NO | |
|---|---|
| Abrasion/Scratch | **1** (circled) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | **4** (circled) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | **9** (circled) |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

O.C. SPRAY EXPOSURE? YES / **NO**
DECONTAMINATED? YES / NO
Self-decontamination instructions given? YES / NO
Refused decontamination? YES / NO
Q 15 min. checks
Staff issued exposure packet? YES / **NO**

| RN NOTIFIED/TIME: Liuato 0959 | PHYSICIAN NOTIFIED/TIME: NA |
|---|---|

ID # 1415924

| TIME/DISPOSITION: RTC 1000 | REPORT COMPLETED BY/TITLE (PRINT AND SIGN): R Delorman, LN | BADGE #: NA | RDOs: WTh |
|---|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)    DISTRIBUTION:    ORIGINAL - Custody    CANARY - Inmate/Employee    PINK - Health and Safety / RTW Coordinator (only work related injury)

# EXHIBIT

# C

EXHIBIT C


I/M


CALIFORNIA DEPARTMENT of Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER P18824 | INMATE'S NAME STAPLETON, ABRAHAM R. | EPRD 10/31/2023 | FACILITY RJD-Facility C | HOUSING LOCATION RJD-C - C 011 2 - 247001U |
|---|---|---|---|---|
| VIOLATION DATE 09/02/2016 | VIOLATION TIME 10:20:00 | VIOLATION LOCATION RJD-Facility C - RVR - DAYROOM | | WITH STG NEXUS No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

**CIRCUMSTANCES OF VIOLATION**

On Friday, September 02, 2016 at approximately 1020 hours while performing my duties as Housing Unit #12 Floor Officer #1. I was monitoring morning dayroom activities at the Officers Podium. I observed Inmate STAPLETON (P18824 FC-11-247U) who was doing painting work in H.U. #12 outside the counselors office getting approached by Inmate ARREOLA (G13561 FC-12-205L) they started to exchange words and all the sudden both Inmates started to fight striking facial and torso area with closed fists as Inmate ARREOLA backed off went and sat down on the benches on A side dayroom Inmate VILLA (T70170 FC-12-216U) stood in front of Inmate STAPLETON and Inmate VILLA continued the fight, both Inmates were striking facial and torso are with closed fists, due to the physical altercation both inmates ended up on C side of the dayroom by the Officers Office. Inmate VILLA backed off by standing up and leaning against the wall while Inmate LOPEZ (AR4279 FC-12-201L) took over the fight and began fighting Inmate STAPLETON, both inmates were striking each other on the facial and torso area with closed fists, due to the physical altercation both inmates ended up in front of the stairwell by B section. I announced Code 1 Via Institutional Radio and then pressed my Personal Alarm Device (PAD). I gave verbal orders to both inmates to get down on the ground and assumed a prone position which they complied. Responding staff arrived on to the scene and all four inmates were escorted out of the building. This concludes my report in this incident.

| REPORTING EMPLOYEE E. Cruz | TITLE correctional officer | ASSIGNMENT H.U #12 Floor #1 | RDO T/W | DATE: 09/02/2016 |
|---|---|---|---|---|

| RVR LOG NUMBER: 000000000840528 | VIOLATED RULE NUMBER: 3005(d)(1) |
|---|---|
| SPECIFIC ACT: Fighting | |

**CLASSIFICATION**

LEVEL: Serious

REFERRED TO: Senior Hearing Officer

OFFENSE DIVISION: Division D

FELONY PROSECUTION LIKELY: Yes

CDC NUMBER: P18824 NAME: STAPLETON, ABRAHAM R. LOG#: 000000000840528   Page 1 of 4

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, __Abraham Stapleton__, declare:

I am over 18 years of age and a party to this action. I am a resident of __RJD Correctional Facility__ Prison,

in the county of __San Diego__,

State of California. My prison address is: __Abraham Stapleton#P-18824, RJDCF B8-224U, 480 Alta Road, San Diego, Ca. 92179__

On __9/16/18__ (DATE),

I served the attached: __FIRST AMENDED COMPLAINT, VERIFIED__

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

Mr. Howard Skebe
Deputy Attorney General
455 Golden Gate Ave, #11000
San Francisco, Ca. 94102-7004

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __9/16/18__ (DATE)        _(signature)_ (DECLARANT'S SIGNATURE)

Civ-69 (Rev 9.97)                                         ODMA PCDOCS WORDPERFECT 22832 1

-9-

*[Envelope, addressee side shown upside-down]*

Return address (upper left, inverted):

> Abraham R Shakespear P8824
> 8/24
> 486 4th Rd
> San Diego, Ca. 92179

Addressee (center, inverted):

> US District Court
> Southern District of Ca.
> 333 Broadway, Ste 420
> San Diego, Ca. 92101
> ATTN: Pro Per Clerk
> Office of the Clerk

Markings:

> Legal Mail
> Confidential

Postmark stamp:

> RECEIVED
> SEP 10 2018
> CLERK US DISTRICT COURT
> SOUTHERN DISTRICT OF CALIFORNIA

Postage indicia:

> US POSTAGE
> 09/01/2018
> Hasler
> $01.840
> FIRST-CLASS MAIL
> ZIP 92179
> 011D11648136

Handwritten note near stamp: "C. Wehr... Department of ... and Rehab."

